UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANK J. BRIGLIADORA,

    Plaintiff,

vs.                                                 CASE NO. 8:10-CV-01944-EAK-TGW

WELLS FARGO BANK, N.A.,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

THIS CAUSE is before this Court on Defendant's, WELLS FARGO BANK, N.A. ("Wells Fargo"), Motion to Dismiss the Plaintiff's, FRANK J. BRIGLIADORA ("Brigliadora or Plaintiff") First Amended Complaint (Doc. 23) and the Plaintiff's response thereto (Doc. 34). Wells Fargo has also filed a Request for Judicial Notice (Doc. 24), which this Court has not taken into consideration in reaching a ruling on Defendant's motion. For the reasons set forth below, Wells Fargo's Motion to Dismiss the Plaintiff's First Amended Complaint is **GRANTED**.

### I. Procedural Background.

Wells Fargo moves this Court to dismiss Brigliadora's claims contained within the First Amended Complaint (Doc. 20) for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Brigliadora's initial complaint was dismissed by this Court without prejudice for failure to state a claim. The initial complaint was based on allegations that Wells Fargo inappropriately reduced Brigliadora's credit limit on his home equity line of credit agreement ("HELOC"). Brigliadora initially filed his first amended complaint containing five counts; however, the Plaintiff later voluntary dismissed Count IV and V (Doc. 33), leaving only Counts I through III. The Counts currently contained within the first amended complaint, are as follows: Count 1 alleging violation of the Truth-in-Lending-Act ("TILA"), and its implementing

regulation ("Regulation Z"), for reducing Plaintiff's HELOC credit limit; Count 2 seeks declaratory relief under TILA and Regulation Z pursuant to 27 U.S.C §2201 asserting that Wells Fargo's reduction of the HELOC credit limit, in absence of a significant decline in the property value, violates TILA and Regulation Z; and Count 3 alleging breach of contract for reducing the credit limit contained within the HELOC.

## II. **Factual Background**

Brigliadora entered into a HELOC agreement (Doc. 20 p.19) with Wells Fargo on May 19, 2008, for $415,000.00, which was secured by real property located at 8932 Rocky Creek Drive, Tampa, Florida ("The property"). (Doc. 20 ¶14). On April 28, 2010, Wells Fargo mailed the Plaintiff written notice that the credit limit under the HELOC had been reduced from $415,000.00 to $313,500.00 due to "a substantial decline in the value of the property securing the account." (Doc. 20 ¶15). In the event Brigliadora thought that the reduction of his credit limit was in error, the written notice contained a phone number and address in which Brigliadora could request reinstatement of his previous credit limit. (*Id.*). After receiving a request from Brigliadora detailing the basis upon which Wells Fargo founded its reduction decision, Wells Fargo sent Brigliadora a written response stating that the valuation of Brigliadora's property was obtained by an Automated Value Model ("AVM") performed on March 5, 2010, resulting in a property value of $294,000.00. (Doc. 20 ¶16). Brigliadora sent written notice to Wells Fargo requesting reinstatement of the original credit limit. (Doc. 20 ¶17). Plaintiff alleges that Wells Fargo failed to comply with the Plaintiff's request and further failed to provide a list of acceptable third party appraisers. (Doc. 20 ¶18).

Plaintiff alleges that the reduction of his HELOC credit limit damaged him because he has been denied access to credit and the reduction dramatically increased the ratio of credit he used to the amount of credit he had available to him. (Doc. 20 ¶19). Plaintiff further alleges that Wells Fargo drove up his Credit Utilization Rate ("CUR"), a major component of his credit rating, thereby damaging his credit rating and increasing the cost of credit to him. (*Id.*). Plaintiff states that he lost access to monies he was using to invest in real estate and pay for unforeseen family medical emergencies. (*Id.*). Finally, Plaintiff alleges that the reduction in credit resulted in the loss of ability to take advantage of current real estate market conditions to secure a smaller retirement home now and the ability to downsize in the near future. (*Id.*).

### III. Standard of Review Under a Motion to Dismiss

Wells Fargo challenges whether Plaintiffs' first amended complaint is factually and legally sufficient. On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Thus, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89 (2007). The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court expressly "retired" the "no set of facts" pleading standard under Rule 8(a)(2) that the Court had previously established in *Conley v. Gibson*, 355 U.S. 41, 47 (1957). *Twombly*, 550 U.S. at 563.

While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As a general proposition the rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Judicial inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly*, 550 U.S. at 555-56.

The Supreme Court has since applied the *Twombly* plausibility standard to another civil action, *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937 (2009). In evaluating the sufficiency of Iqbal's complaint in light of *Twombly's* construction of Rule 8, the Court explained the "working principles" underlying its decision in *Iqbal*. 129 S. Ct. at 1949. First, the Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Second, restating the plausibility standard, the Court held that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show [n]'-'that the pleader is entitled to relief.' " *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). The Court suggested that courts considering

3

motions to dismiss adopt a "two-pronged approach" in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. *Id.* at 1951-52 (quoting *Twombly*, 550 U.S. at 567). Finally, the Court in *Iqbal* explicitly held that the *Twombly* plausibility standard applies to all civil actions because it is an interpretation of Rule 8. *Id.* at 1953.

### IV. <u>Discussion</u>

TILA, implemented through Regulation Z, 12 C.F.R. part 226, prohibits a creditor from unilaterally changing any material term of a HELOC. 15 U.S.C. §1647(c)(1). Under §1647(2), certain changes are not precluded and a creditor is permitted to make changes. One such exception within the statute allows a creditor to suspend the account or lower the credit limit during a period "in which the value of the consumer's principal dwelling which secures the outstanding balance is significantly less than the original appraisal value of the dwelling." *Id.* §1647 (c)(2)(B). There is no definition within TILA or Regulation Z for when a decline is 'significant.' Brigliadora admits that there is an exception found within TILA and Regulation Z which permitted the Defendant to reduce the credit limit on his HELOC. (Doc. 20 pp. 6-7 ¶21). While the Plaintiff admits to such an exception, the Plaintiff challenges the method by which Wells Fargo valued the property as self-serving and dubious. Specifically, Brigliadora challenges the use of an automated valuation model ("AVM") by Wells Fargo to value to the property used to secure Brigliadora's HELOC. Such a challenge has previously been made and found to be without merit.

In *Raeth v. National City Bank*, 755 F.Supp. 2d 899 (W.D. Tenn. 2010), the court addressed a myriad of issues and contentions currently being raised in the case *sub judice*. In *Raeth* the dispute arose over National City's suspension of plaintiff's HELOC. (*Id.* at 900). The plaintiff obtained a $35,000.00 HELOC from National City, which was secured by plaintiff's home valued at $353,800.00 at the time the loan originated. (*Id.*). National City explained in a letter that through the use of an AVM, plaintiff's home had declined in value to $332,100.00 and

4

plaintiff's HELOC has been suspended. (*Id.*). Plaintiff subsequently brought suit and one of the plaintiff's allegations was that National City "knowingly lacked a sound factual basis for concluding that the propert[y] had declined in value significantly enough to support reducing the credit limits..." (*Id.* at 906). More specifically, the plaintiff attacked National City's AVM method of evaluation as "dubious automated formulas and algorithms, with unreliable or inaccurate analyses designed to reach a predetermined result." (*Id.*). The *Raeth* court dismissed the plaintiff's claim with prejudice because the plaintiff had not stated a viable claim reasoning that there is no provision in TILA or Regulation Z requiring a creditor to employ a particular valuation model. (*Id.*).

Turning to the instant case, Brigliadora's claims mirror those made by the plaintiff in *Raeth*. Brigliadora alleges that "Defendant did not perform any type of individualized assessment of Brigliadora's home value to determine depreciation, but rather, on information and belief, Defendant determined property values through **dubious or inaccurate self-serving analyses designed to reach a predetermined result against the borrower.**" (Doc. 20 ¶3) (emphasis added). Such an allegation is not only factually unsubstantiated within the complaint, the statute does not forbid AVM as a valuation method, and if such a method were to be forbidden, Congress could have expressly stated the limitation. While Brigliadora argues that Wells Fargo did not perform any type of an individualized assessment, there is nothing in TILA requiring an individualized assessment. The use of an AVM to determine depreciation does not give rise to liability. As *Raeth* makes clear, the use of AVMs as an evaluation method is not unlawful or indicative of self-serving analyses subjecting a creditor to liability.

Brigliadora further challenges Wells Fargo's evaluation by alleging that while Brigliadora did receive a letter indicating Wells Fargo's intention to lower the HELOC credit limit, the letter failed to provide the value of Plaintiff's home as valued by Wells Fargo, how that property value was determined, or what the property value would be required to reinstate the full credit limit. In an April 28, 2010, letter (Doc. 20 p.17) attached to Plaintiff's complaint, Wells Fargo informed Brigliadora of the HELOC credit limit reduction to $313,500.00, due to a substantial decline in the value of the property securing the account. The letter further states that reinstatement of the original credit limit may be requested and provided a phone number and address for which Wells Fargo may be contacted. In a follow up later dated May 11, 2010 (Doc. 20 p. 45), also attached to Plaintiff's complaint, Wells Fargo responded to a request by

5

Brigliadora for a valuation of the property that secured the HELOC. The letter details as follows:

> In compliance with Regulation B, the Valuation information that you requested is:
> Date of Valuation: March 25, 2010
> Property Value: $294,000.00
> Source Utilized: AVM

While Brigliadora alleges that Wells Fargo has not complied with his request to provide a list of acceptable third party appraisals, Brigliadora points to no authority in which such a request must be accommodated by Wells Fargo under TILA. The Plaintiff makes the blanket assertion, "On information and belief, Brigliadora's property has not significantly declined in value," but fails to include any estimation or appraisal of how Brigliadora's property value is different than the value determined by the AVM utilized by Wells Fargo.

Plaintiff also pleads a breach of contract claim by reducing his credit limit "where no significant decline in value of the property has first occurred." (Doc. 20 ¶20). Furthermore, Plaintiff alleges that Wells Fargo "declined to provide [him] with an acceptable appraiser or the proper opportunity to reinstate the credit limit after their improper reduction." (Doc. 20 ¶44). Brigliadora's breach of contract claim must be dismissed as he has failed to plead with any degree of particularity factual support for his allegations.

The HELOC agreement allows for reduction of the credit limit "[i]f the value of the Property that secures this Agreement declines significantly below the Property's appraised value during the time of this Agreement." (Doc. 20 p. 26). There is not a single allegation anywhere in the Plaintiff's first amended complaint that purports to correct the alleged mistaken property value reached by Wells Fargo. In addition, even assuming *arguendo* that Plaintiff would support a higher value, Plaintiff fails to advance at what value Wells Fargo would be forbidden to lower his HELOC credit limit under the agreement's reduction of credit limit provision. Brigliadora further argues that Wells Fargo breached the HELOC agreement by failing to provide the Plaintiff with a list of acceptable appraisers (Doc. 20 ¶¶43, 44); however, Brigliadora fails to indicate a provision under the HELOC agreement that places such a burden on Wells Fargo. In consideration of the Plaintiff's factually devoid, yet abundantly conclusory complaint, this Court dismisses the Plaintiff's breach of contract claim. This Court notes that such result was reached by the *Raeth* court facing a breach of contract claim on similar factual bases.

CASE NO. 8:10-CV-01944-EAK-TGW

Assuming all of Brigliadora's claims as stated are true, there is no violation of TILA and Regulation Z on behalf of Wells Fargo, thus there can be no liability or legal remedy. Because Brigliadora has failed to state a viable claim, his request for declaratory relief based on the same alleged violation of TILA and Regulation Z must also fail. *See Raeth supra.* Taking all of Plaintiff's factual allegations as true, which are refuted by Plaintiff's own exhibits attached to the first amended complaint, the facts as alleged state no cause of action for which the substantive law provides a remedy. Likewise, Plaintiff's breach of contract claim is also deficient. Assuming the veracity of the factual allegations as plead, the factual allegations fail to give ride to an entitlement of relief. *See Iqbal supra.* Plaintiff's claims are dismissed with prejudice in their entirety. Accordingly, it is:

**ORDERED** that the Defendant's, WELLS FARGO BANK, N.A., Motion To Dismiss the Plaintiff's, FRANK J. BRIGLIADORA, First Amended Complaint (Doc. 23) be **GRANTED WITH PREJUDICE**.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this ___6___ th day of June, 2011.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to: All parties and counsel of record.